UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEVAUGHN J. GAMBLIN,

              Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

17-CV-1334-MJR

DECISION AND ORDER

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 6).

      Plaintiff Devaughn Gamblin brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying him Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Gamblin's motion (Dkt. No. 8) is granted, the Commissioner's motion (Dkt. No. 12) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## **BACKGROUND**

      On December 18, 2013, Gamblin filed an application for SSI alleging disability since November 15, 2013, due to "mental health issues," anxiety, "some known psychosis," blurred vision, stomachaches, and headaches. (*See* Tr. 70, 125-29, 143).[1] Gamblin's application was denied on March 4, 2014 (Tr. 62-74), after which he requested

---

[1]     References to "Tr." are to the administrative record in this case.

a hearing before an Administrative Law Judge (Tr. 78-80). On May 17, 2016, Administrative Law Judge Scott Johnson (the "ALJ") held a video hearing from Kansas City, Missouri at which Gamblin appeared with counsel and testified from Buffalo, New York. (Tr. 37-61). On July 25, 2016, the ALJ issued his decision denying Gamblin's SSI claim. (Tr. 16-36). Gamblin requested review by the Appeals Council (Tr. 121-24), but on October 27, 2017, the Appeals Council denied Gamblin's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II. *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts,

diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Gamblin has not engaged in substantial gainful activity since December 18, 2013, his application date. (Tr. 21). At step two, the ALJ concluded that Gamblin has the following severe impairments: anxiety disorder and psychotic disorder. (*Id.*). At step three, the ALJ found that Gamblin does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 23). Before proceeding to step four, the ALJ assessed Gamblin's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to understand, remember, and carry out simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions, with few, if any, work place changes. He can frequently interact with supervisors, but there should be no interaction with the public. He can tolerate occasional interaction with co-workers but is unable to perform work requiring tandem tasks.

(Tr. 24). Proceeding to step four, the ALJ found that Gamblin has no past relevant work. (Tr. 30). Thus, at the fifth step, the ALJ considered Gamblin's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that Gamblin can perform jobs that exist in significant numbers in the national economy, such as dishwasher, laundry worker, and industrial cleaner. (Tr. 31). Accordingly, the ALJ found that Gamblin can successfully adjust to other work and, therefore, that he has not been under a disability within the meaning of the Act since his application date of December 18, 2013. (Tr. 32).

IV. *Gamblin's Challenge*

Gamblin argues, *inter alia*, that this case should be remanded because the ALJ's RFC finding is not based on any medical opinion evidence. (Dkt. No. 8-1 (Gamblin's Memo. of Law)). The Court agrees.

Social Security Ruling 83-10 defines RFC as:

> A medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s). RFC is the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.

1983 WL 31251, at *7 (1983). As a medical assessment, an ALJ generally cannot make an RFC determination without medical testimony or other medical evidence to support his or her decision. *See id.*

An ALJ cannot simply "secure raw data from the treating physician" to make a disability decision. *Cira v. Comm'r of Soc. Sec.*, No. 15-CV-6704 (DLI), 2017 WL 4339480, at *9 (E.D.N.Y. Sept. 29, 2017) (quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991)). An ALJ must instead rely on medical opinions based on that raw data. *See Sweeting v. Colvin*, No. 12-CV-917(DNH/CFH), 2013 WL 5652501, at *4 (N.D.N.Y. Oct. 15, 2013). Thus, it is error for an ALJ to base his RFC assessment solely upon his interpretation of raw medical data without an expert's medical opinion. *See Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) ("[W]ithout opinions from the medical professionals concerning the impact of these results on Plaintiff's RFC, the ALJ simply concluded that Plaintiff was capable of performing light work. This was error."); *see also Moore v. Colvin*, No. 6:15-cv-06281 EAW, 2016 WL 4766345, at *16 (W.D.N.Y.

Sept. 13, 2016) ("[T]he ALJ was not entitled, as a non-expert, to interpret the voluminous evidence of Plaintiff's physical impairments using his own common sense.").

Here, the ALJ's RFC finding regarding Gamblin's mental limitations is not based on any medical opinion, as the ALJ rejected all three medical and non-medical opinions in the record regarding Gamblin's mental issues. Specifically, the ALJ gave "little weight" to the opinions of Christine Radice, MHC-P, Gamblin's mental health counselor, Dr. Susan Santarpia, the psychological consultative examiner, and Dr. C. Butensky, the state agency review psychologist. (Tr. 29-30). After rejecting these opinions, the ALJ proceeded to craft an RFC determination based only on Gamblin's mental health treatment records. Even if the ALJ was justified in rejecting the foregoing medical opinions, doing so left a record with no medical opinions regarding the functional effects of Gamblin's mental disorders. As such, the ALJ left a gap in the record and relied instead on his own lay opinion to interpret the treatment records. When such an evidentiary gap exists, the ALJ's RFC determination is not supported by substantial evidence and remand is warranted. *See Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *17-18 (W.D.N.Y. May 7, 2014). When facing an incomplete record, an ALJ should develop the record by obtaining a consultative examination, re-contacting a medical source, or having an expert testify at the hearing. *Gross*, 2014 WL 1806779, at *19; *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (finding that the ALJ should have further developed the record where his rejection of a medical opinion had left a gap in the record). Thus, the Court finds that the ALJ's RFC finding is not supported by substantial evidence and that the case must therefore be remanded.[2]

---

[2] On remand, the ALJ should also obtain and consider Gamblin's records from Access VR, a work program for people with disabilities. (*See* Dkt. No. 8-1 (Gamblin's Memo. of Law) at 19-21).

## **CONCLUSION**

For the foregoing reasons, Gamblin's motion for judgment on the pleadings (Dkt. No. 8) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: April 25, 2019
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge